612 S.E.2d 451

**Chris ROBERTSON, Plaintiff,**

v.

**BUMPER MAN FRANCHISING COMPANY,
INC. and Bumper Man, Inc., Defendants.**

**No. 25971.**

Supreme Court of South Carolina.

Heard March 15, 2005.
Decided April 18, 2005.

Clinch Heyward Belser, Jr. and Michael J. Polk, both of Columbia, for Plaintiff.

Natalma M. McKnew and Thomas Warren Epting, both of Greenville, for Defendants.

Justice PLEICONES.:

Pursuant to Rule 228, SCACR, we accepted two questions certified by United States District Judge Matthew J. Perry:

1) Does the South Carolina Business Opportunity Sales Act (the Act) S.C.Code Ann. §§ 39–57–10 *et seq.* apply to a contract between a business located in Texas and a Texas resident, and performed in Texas and Washington?

2) Does the answer to question 1 change if the individual later moves to South Carolina and signs a new contract with a related entity to be performed in South Carolina?

We answer both questions "No."

## FACTS [1]

In 2000, plaintiff entered a business agreement with Bumper Man, Inc. (BMI). This agreement, entered into in Texas, licensed plaintiff to practice the Bumper Man method of repairing automobile bumpers within a territory in San Antonio (Texas Agreement). BMI's licensing fee was $15,000: Plaintiff paid $10,000 and secured the remaining $5,000 with a promissory note.

The Texas Agreement provided, among other things, that plaintiff would be offered a franchise for no additional cost at some point in the future. About four months after entering the Texas Agreement, plaintiff moved to Seattle. He operated his business there pursuant to the Texas Agreement. The Texas Agreement had required plaintiff to pay a $2,000 relocation fee if he moved from San Antonio. Further, that agreement required him to pay the remainder of the BMI licensing fee if he relocated. In February 2001, a new entity, Bumper Man Franchising, Inc. (BMFI), prepared and sent plaintiff a Franchise Offer Circular.[2] On the same day that plaintiff received the Franchise Offer Circular, plaintiff signed a new promissory note in favor of BMFI for $12,000.[3]

In July 2001, plaintiff moved to South Carolina. Once here, he signed a franchise agreement with BMFI and began operating as a Bumper Man Franchise (South Carolina Agree-

---

1. We restrict our discussion to the facts recited in the certification order.

2. This circular is required by the FTC Franchise Disclosure Rule, 16 CFR §§ 436 *et seq.*

3. The $12,000 represents the $2,000 relocation fee and $10,000 licensing fee due BMI under the Texas Agreement.

ment). In August 2002, plaintiff and BMFI had a falling out, and this litigation followed.

The parties acknowledge that the Texas licensing agreement with BMI was performed exclusively in Texas and Washington State, while the South Carolina franchise agreement with BMFI was entered into and performed here.

## ISSUES

A. Does the South Carolina Business Opportunity Sales Act (the Act) S.C.Code Ann. §§ 39–57–10 *et seq.* apply to a contract between a business located in Texas and a Texas resident, and performed in Texas and Washington?

B. Does the answer to question 1 change if the individual later moves to South Carolina and signs a new contract with a related entity to be performed in South Carolina?

## ANALYSIS

A. Applicability of the Act to the Texas Agreement

The first question asks whether the Act applies to the Texas Agreement, entered into in that state and wholly performed outside South Carolina. It is unnecessary to conduct any in-depth analysis in order to conclude that the answer to this question is "no." *E.g., Ex parte First Pennsylvania Banking and Trust Co.*, 247 S.C. 506, 148 S.E.2d 373 (1966) (state statutes have no extraterritorial effect).[4]

B. Does the Act apply to the Texas Agreement by virtue of the subsequent contract entered into by plaintiff and BMFI in South Carolina?

We answer this question 'No.' There is nothing in this record to suggest that the parties to the Texas Agreement contemplated that the plaintiff would relocate to South Car-

---

4. Plaintiff cites numerous cases in brief for the proposition that a state statute regulating business practices applies where the state has a significant connection with the transaction. Here, South Carolina has **no** relationship with the BMI licensing agreement executed in Texas and wholly performed in that state and in the State of Washington.

olina and that the anticipated franchise offer would be made and performed here. We hold that the subsequent South Carolina Agreement between plaintiff and BMFI does not cause the Act to relate back and apply to the Texas Agreement between plaintiff and BMI.

We note further that the Act applies to the start-up of a business. S.C.Code Ann. § 39–57–20 (Supp.2004). The application, if any, of the Act to the South Carolina Agreement between plaintiff and BMFI is not before the Court. We emphasize that our answers are restricted to the narrow questions certified.

### CONCLUSION

We answer both certified questions

'No.'

TOAL, C.J., MOORE, WALLER, and BURNETT, JJ., concur.